**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| EMILY LEWIS, individually and on behalf of a class of similarly situated individuals, | ) ) ) | |
| *Plaintiff*, | ) ) | |
| v. | ) ) | No. |
| SANOFI-AVENTIS U.S., LLC a Delaware Corporation, | ) ) ) | |
| *Defendant*. | ) ) | |

**CLASS ACTION COMPLAINT**

Plaintiff Emiley Lewis brings this Class Action Complaint and Demand for Jury Trial against Sanofi-Aventis U.S., LLC ("Defendant" or "Sanofi") on her own behalf, and on behalf of a Class of individuals who purchased Defendant's "Maximum Strength Selsun Blue" brand of anti-dandruff shampoo to seek redress for Defendant's false, misleading, and deceptive advertising of its products. On behalf of herself and the proposed class of individuals who purchased Defendant's Selsun Blue products, Plaintiff seeks damages, restitution and injunctive relief against Defendant for selling personal hair care product that did not provide the benefits advertised and in fact contained harmful chemicals that instead caused further scalp irritation and hair loss. Plaintiff, for her Class Action Complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and as to all other matters, upon information and belief, including investigation conducted by her attorneys.

**NATURE OF THE ACTION**

1.      Defendant manufactures and distributes a line of anti-dandruff shampoo under the "Selsun Blue" brand that is sold in thousands of retail stores across the country.

2.      Defendant advertises that its Maximum Strength Selsun Blue shampoo products provide a number of benefits for consumers, including featuring directly on the product labeling that they provide "Antidandruff" treatment, and "Helps Prevent and Eliminate Itchy Scalp & Visible Flakes."

3.      However, despite the express representations made by Defendant, Defendant's Maximum Strength Selsun Blue products all contain a toxic chemical, DMDM hydantoin ("DMDM"), which is a "formaldehyde donor" that can actually cause further scalp irritation and/or hair loss.

4.      Furthermore, Defendant's Maximum Strength Selsun Blue products all contain selenium sulfide, a key ingredient used to combat dandruff. Like DMDM, selenium sulfide is also known to cause hair damage and hair loss.

5.      Plaintiff, like other consumers nationwide, purchased Defendant's Maximum Strength Selsun Blue products based on the express representations that they could safely reduce dandruff and scalp irritation, only to experience further scalp irritation and hair loss from using the products.

6.      Nowhere did Defendant disclose to Plaintiff and other purchasers of its Maximum Strength Selsun Blue products that its products contained chemical compounds that could exacerbate scalp irritation and/or cause hair loss. Had Defendant accurately disclosed such information, Plaintiff and the other members of the Class would not have purchase Defendant's products, or paid significantly less for them.

7.      Plaintiff brings this action on behalf of herself and other similarly situated consumers to obtain redress for those who purchased the falsely advertised Selsun Blue products from Defendant.

2

**PARTIES**

8.      Plaintiff Emiley Lewis is a natural person and a citizen of Illinois.

9.      Defendant Sanofi-Aventis U.S., LLC is a privately held company, incorporated in Delaware, with its U.S. headquarters located in New Jersey. Defendant sells thousands of personal care, cosmetics, and pharmaceutical products across the world, including throughout North America, including in Illinois, and distributes, advertises, and sells its Selsun Blue shampoo products to thousands of consumers in Illinois and elsewhere across the nation in retail stores such as Jewel-Osco, Walgreens, and Walmart.

**JURISDICTION AND VENUE**

10.      This Court has diversity jurisdiction under 28 U.S.C. § 1332(a) and (d), because (i) at least one member of the putative class is a citizen of a state different from any Defendant, (ii) the amount in controversy exceeds $5,000,000, exclusive of interests and costs, and (iii) none of the exceptions under that subsection apply to the instant action.

11.      This Court has personal jurisdiction over Defendant because Defendant transacts business in Illinois and because a substantial part of the events giving rise to Plaintiff's claim occurred in Illinois, as Defendant advertised its Selsun Blue products to Plaintiff in Illinois, and Plaintiff purchased Defendant's Selsun Blue products in Illinois.

12.      Venue is proper in this Court pursuant to 28 U.S.C. §1391 (b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District, as Defendant advertised its Selsun Blue products to Plaintiff in this District, and Plaintiff purchased the Selsun Blue products at issue in this District.

## COMMON FACTUAL ALLEGATIONS

13.     As many as 50 million people in America suffer from dandruff – flaking of the skin on the scalp – and spend over $300 million on personal care products and treatments for the condition.[1]

14.     Capitalizing on this massive market, Defendant markets and sells its Maximum Strength Selsun Blue brand of shampoos as an "Antidandruff Shampoo" that "Helps Prevent and Eliminate Itchy Scalp & Visible Flakes." As shown below, Defendant makes these representations directly on its product labeling.



---

[1] *See* www.ncbi.nlm.nih.gov/pmc/articles/PMC3129121/# (accessed 1/29/2021); *see also* www.mayoclinic.org/diseases-conditions/dandruff/symptoms-causes/syc-20353850 (accessed 1/29/2021).

4



15.     However, Defendant's claims regarding its products' ability to treat dandruff and scalp itch fail to disclose that its Maximum Strength Selsun Blue products contain ingredients that can actually exacerbate scalp itch and irritation, and even cause hair loss.

16.     Specifically, one of the key ingredients in Defendant's Maximum Strength Selsun Blue products is Selenium Sulfide. Completely undisclosed by Defendant is that Selenium Sulfide is well known to cause increased scalp irritation and, critically, hair loss.[2]

---

[2]    *See*    https://medlineplus.gov/druginfo/meds/a682258.html;    www.mayoclinic.org/drugs-supplements/selenium-sulfide-topical-route/precautions/drg-20065908?p=1; *Effect of Selenium Sulfide Suspension on Hair Root*, 35:2 JOURNAL OF INVESTIGATIVE DERMATOLOGY, at 65–67 (1960) (available at sciencedirect.com/science/article/pii/S0022202X1549428X).

17.     Furthermore, Defendant's Maximum Strength Selsun Blue products contain the preservative DMDM hydantoin, which is a chemical that slowly releases formaldehyde. While "DMDM hydantoin" is a chemical that the average consumer would have no knowledge of or be able to recognize, most consumers do know what "formaldehyde" is and that it is a toxic chemical.

18.     Indeed, studies have shown that DMDM hydantoin can cause skin irritation and that as much as 8% of the population have an allergic reaction to skin care products containing formaldehyde.[3]

19.     In fact, recognizing the dangers posed by formaldehyde, the European Union has gone so far as to ban *all* use of formaldehyde in cosmetics products.[4]

20.     As evidenced by the significant number of complaints voiced about Defendant's Selsun Blue products, Defendant's use of these two chemicals has caused thousands of consumers to suffer from increased skin irritation and hair loss. Just a handful of actual reviews left on Amazon.com make clear that Defendant's products do not provide the benefits promised and can actually cause harm:

> *1 star*: Stephanie Hutzler
> Removed my dandruff but at the cost of extreme damage to my hair. It dried it out and would fall out in shower. I lost so much hair until I realized this was the culprit. A hair dresser examined my hair and said I had breakage all over.
>
> *1 star*: Lisa B.
> UPDATE hair breaking and falling out excessively!
> After the second use my hair began breaking and falling out and stopped growing back.
>
> *1 star*: Amazon Customer
> Made condition worse. After using it made my scalp so raw and itchy it kept me up at night.

---

[3] *See North American Contact Dermatitis Group Patch Test Results 2013-2014*, DERMATITIS 28(1), 33–46 (available at https://pubmed.ncbi.nlm.nih.gov/27775967/),
[4] *See* https://echa.europa.eu/cosmetics-prohibited-substances/-/legislationlist/details/EU-COSM_PROD-ANX_II_PROHIB-100.000.002-VSK-5C0FE8.

> *1 star*: Mark
> …One unfortunate side effect, however, is it caused my hair to start thinning within 4 months of use. Apparently, I'm not alone and this is a problem with more people than myself if you do an internet search. The bottle recommends you use at LEAST twice a week. Not ONLY twice a week…. At LEAST. Meaning it is assumed you can use it more than twice a week and not experience unforeseen side effects like your hair falling out…

21.     Critically, despite knowing that DMDM and Selenium Sulfide can cause scalp irritation and hair loss, and that thousands of customers purchasing its Maximum Strength Selsun Blue products have experienced these issues, Defendant fails to disclose *any* warning or notice to consumers about these chemicals or that these products might not be able to safely provide the benefits specifically advertised.

22.     Plaintiff, as well as other consumers nationwide, reasonably relied on Defendant's representations that its Maximum Strength Selsun Blue products would safely and effectively relieve dandruff and dry scalp. More importantly, Plaintiff, like other consumers nationwide who purchased Defendant's products reasonably believed that Defendant's Maximum Strength Selsun Blue products did not have any known side effects or contain any chemicals that might cause *further* scalp irritation or hair loss.

23.     Plaintiff, as well as other consumers nationwide who purchased Defendant's Maximum Strength Selsun Blue products would not have purchased them or would have paid materially less for them had they known that they contained chemicals that are known to cause scalp irritation and hair loss, and have suffered damages as a result of Defendant's misconduct.

## FACTS SPECIFIC TO PLAINTIFF

24.     In September 2020 Plaintiff visited a Jewel-Osco retail location in Chicago Illinois to purchase, among other products, a shampoo to help eliminate her dry scalp and dandruff.

25. Plaintiff compared various shampoo products before she chose to purchase Defendant's Maximum Strength Selsun Blue Moisturizing shampoo.

26. Plaintiff chose to purchase Defendant's Maximum Strength Selsun Blue Moisturizing shampoo specifically based on Defendant's representations that it "Helps Prevent and Eliminate Itchy Scalp & Visible Flakes" and would be "moisturizing."

27. Plaintiff also reviewed the back panel of Defendant's product and did not see any warnings, notices, or disclosures that the shampoo could cause further skin irritation, hair loss, or that it contained formaldehyde. As such, Plaintiff, like the thousands of other consumers who purchased Defendant's maximum strength Selsun Blue products, reasonably believed that Defendant's products were safe, would work as advertised, and could not cause any adverse reaction.

28. Following Defendant's instructions on the back of the product that "for best results, use at least twice a week." Plaintiff began to use Defendant's Maximum Strength Selsun Blue Moisturizing shampoo twice a week for approximately four months.

29. Contrary to the representations made by Defendant, Plaintiff's dry scalp did not go away, and in fact her scalp became more irritated.

30. Furthermore, Plaintiff's hair became dry, brittle, and began to easily break off, causing Plaintiff substantial hair loss.

31. Once Plaintiff realized that Defendant's product was causing her increased scalp irritation and hair loss Plaintiff stopped using the product, and soon thereafter stopped experiencing hair loss.

32. Plaintiff and the other members of the Class were deceived and misled by Defendant's claims regarding its Maximum Strength Selsun Blue products that they would treat

dry scalp and dandruff and were safe to use and did not contain any chemicals that may exacerbate scalp irritation or cause hair loss. These claims were a material factor that influenced Plaintiff's and the other members of the Class' decision to purchase Defendant's Maximum Strength Selsun Blue products and Plaintiff and the other members of the Class would not have purchased such products had they known that Defendant's claims regarding the efficacy and safety of its products were false.

33.     As a result, Plaintiff and the other members of the Class have been damaged by their purchases of Defendant's Maximum Strength Selsun Blue products and have been deceived into purchasing a product that they believed would be capable of safely providing the benefits claimed on the product packaging and advertising when in fact, it could not, and even posed an undisclosed risk of harm.

34.     Defendant has received significant profits from the false marketing and sale of its Maximum Strength Selsun Blue products.

## CLASS ACTION ALLEGATIONS

35.     Plaintiff brings this action on behalf of herself and a Class and Subclass, defined as follows:

(i)     The Class: All persons in the United States who purchased any of Defendant's Maximum Strength Selsun Blue products within the applicable statute of limitations within the United States.

(ii)    The Illinois Subclass: All persons in the United States who, within three years prior to the commencement of this action, purchased any of Defendant's Maximum Strength Selsun Blue products at any retail store located in Illinois.

36.     Plaintiff will fairly and adequately represent and protect the interests of the other members of the Class and Subclass. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the other members of the Class and Subclass, and have the financial resources to do so. Neither Plaintiff nor her counsel has any interest adverse to those of the other members of the Class and Subclass.

37.     Absent a class action, most members of the Class and Subclass would find the cost of litigating their claims to be prohibitive and would have no effective remedy. Unless the Class and Subclass is certified, Defendant will retain the monies it received from the members of the Class and Subclass as a result of its unfair and deceptive conduct.

38.     The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants and promotes consistency and efficiency of adjudication.

39.     Defendant has acted and failed to act on grounds generally applicable to Plaintiff and the other members of the Class and Subclass, requiring the Court' imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and Subclass, and making injunctive or corresponding declaratory relief appropriate for the Class and Subclass as a whole.

40.     Plaintiff's claims are typical of the claims of the other members of the Class and Subclass as Plaintiff and the other members of the Class and Subclass have all suffered harm and damages as a result of Defendant's unlawful and wrongful practice of falsely advertising the benefits of its Maximum Strength Selsun Blue products and withholding information regarding the chemicals contained within its products and their potential harmful effects.

10

41.     There are many questions of law and fact common to the claims of Plaintiff and the other members of the Class and Subclass, and those questions predominate over any questions that may affect individual members of the Class and Subclass. Common questions for the Class and Subclass include, but are not limited to, the following:

(a)     Whether Defendant advertised and/or warranted that its Maximum Strength Selsun Blue products would relieve dry scalp and dandruff;

(b)     Whether Defendant advertised and/or warranted that its Maximum Strength Selsun Blue Products would be safe to use and would not cause increased scalp irritation and/or hair loss;

(c)     Whether Defendant's advertising of its Maximum Strength Selsun Blue products was false or misleading;

(d)     Whether Defendant's conduct violates public policy;

(e)     Whether Defendant's conduct violated the Illinois Consumer Fraud Act and other such similar statutes;

(f)     Whether as a result of Defendant's misrepresentations of material facts related to its Maximum Strength Selsun Blue products, Plaintiff and the other members of the Class and Subclass have suffered ascertainable monetary losses;

(g)     Whether Plaintiff and the other members of the Class and Subclass are entitled to monetary and/or restitutionary and/or injunctive relief or other remedies, and, if so, the nature of such remedies.

## COUNT I
### For Violations of Consumer Protection Laws
### (on behalf of the Class and the Subclass)

42.     Plaintiff hereby incorporates the above allegations by reference as though fully set forth herein.

43.     The Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 502/1 *et seq.* ("ICFA"), as well as other materially identical consumer fraud statutes enacted by states throughout the country, prohibit deceptive acts and practices in the sale of products such as Defendant's Maximum Strength Selsun Blue products.

44.     Plaintiff and the other members of the Class and Subclass are "consumers" or "persons," as defined under the ICFA and other states' consumer protection laws.

45.     Defendant's conduct as alleged herein occurred in the course of trade or commerce.

46.     Defendant's actions in affirmatively representing that its Maximum Strength Selsun Blue products can safely treat dry scalp and reduce dandruff when the products sold in fact contained harmful chemicals that can further irritate the scalp and cause hair loss offends public policy, has caused and continues to cause substantial injury to consumers, and constitutes an unfair and deceptive trade practice.

47.     Upon information and belief, and given the fact that Defendant manufactures its Maximum Strength Selsun Blue products and creates the product labeling and advertising featured on them, Defendant knew or should have known at all relevant times that its Maximum Strength Selsun Blue products contained harmful chemicals that did not relieve dry scalp and reduce dandruff as represented and advertised and in fact could cause further scalp irritation and even hair loss, but Defendant nonetheless continued to advertise and sell its Maximum Strength Selsun Blue products using such false representations and without disclosing the potentially harmful effects of the chemicals contained in them.

48.     Defendant intended for consumers to rely on its representations regarding the safety and efficacy of its Maximum Strength Selsun Blue products when choosing them. Personal care products such as Defendant's Maximum Strength Selsun Blue products are specifically marketed and sold based on representations made on their packaging and labeling regarding their safety and efficacy, and consumers rely on such representations to make an informed decision as to whether the products they purchase will be effective for them and safe to use.

49.     Plaintiff and the other members of the Class and Subclass did reasonably rely on Defendant's misrepresentations in choosing to purchase its Maximum Strength Selsun Blue products and would not have purchased the products they bought, or would have paid materially less for them, had Defendant not made the false and deceptive claims regarding their ability to relieve dry scalp and reduce dandruff safely and had Defendant not withheld information regarding the harmful chemicals contained in them.

50.     As a direct and proximate cause of Defendant's deceptive and unfair trade practices, Plaintiff and the other members of the Class and Subclass suffered actual damages, including monetary losses for the purchase price of Defendant's Maximum Strength Selsun Blue products which did not provide the benefits specifically advertised on their product packaging and labeling and in fact contained chemicals that could cause harm.

51.     Defendant's conduct is in violation of the ICFA and other states' consumer protection laws, and pursuant to 815 ILCS 505/10a and other such states' consumer protection laws, Plaintiff and the other members of the Class and Subclass are entitled to damages in an amount to be proven at trial, reasonable attorney's fees, injunctive relief prohibiting Defendant's unfair and deceptive advertising going forward, and any other penalties or awards that may be appropriate under applicable law.

**COUNT II**
**Breach of Express Warranty**
**(on behalf of the Class and Subclass)**

52.     Plaintiff hereby incorporates the above allegations by reference as though fully set forth herein.

53.     Through its product labeling and advertising, including specifically that the Maximum Strength Selsun Blue products purchased by Plaintiff and the other members of the

Class and Subclass would "Help[] Prevent and Eliminate Itchy Scalp & Visible Flakes," Defendant expressly warranted to Plaintiff and the other members of the Class that its Maximum Strength Selsun Blue products were capable of safely eliminating "itchy scalp" and reduce "visible flakes" and did not contain chemicals that would further irritate scalp skin or increase visible flakes.

54.     These affirmations of fact and promises regarding its Maximum Strength Selsun Blue products were part of the basis of the bargain between Defendant and Plaintiff and the other members of the Class. Plaintiff and the other members of the Class would not have purchased Defendant's Maximum Strength Selsun Blue products, or would have paid materially less for them, had they known that these affirmations and promises were false and that Defendant's Maximum Strength Selsun Blue products contained chemicals that can actually increase scalp dryness and visible flakes.

55.     Defendant breached the express warranties it represented about its Maximum Strength Selsun Blue products and their qualities because, as set forth above, the Maximum Strength Selsun Blue products purchased by Plaintiff and the other members of the Class contained harmful chemicals that were capable of increasing scalp irritation and visible flakes.

56.     As a direct and proximate result of Defendant's breach of its express warranties, Plaintiff and the members of the Class have been damaged in an amount to be determined at trial.

**COUNT III**
**Violation of the Magnusson-Moss Warranty Act**
**(on behalf of the Class and Subclass)**

57.     Plaintiff hereby incorporates the above allegations by reference as though fully set forth herein.

58.     Plaintiff and the other members of the Class are consumers as defined in 15 U.S.C. § 2301(3).

14

59.    Defendant is a supplier and warrantor as defined in 15 U.S.C. § 2301(4)–(5).

60.    Defendant's Maximum Strength Selsun Blue products are a consumer product as defined in 15 U.S.C. § 2301(1).

61.    The Magnusson-Moss Warranty Act allows consumers to pursue a civil action against sellers of consumer products for failure to comply with any written warranties represented about the product sold.

62.    Defendant's advertising and representations on its product packaging that its Maximum Strength Selsun Blue products "Help[] Prevent and Eliminate Itchy Scalp & Visible Flakes, constitutes a written warranty.

63.    Defendant breached the written warranties it represented regarding its Maximum Strength Selsun Blue products and their qualities because Defendant's Maximum Strength Selsun Blue products do not conform to Defendant's affirmations and promises described above, as they contain harmful chemicals that can increase scalp itch and visible flakes.

64.    Defendant manufactures, sells, and markets its Maximum Strength Selsun Blue products and therefore knew or should have known that its Maximum Strength Selsun Blue products did not possess the qualities it represented in its written warranties.

65.    Plaintiff and the other members of the Class would not have purchased Defendant's Maximum Strength Selsun Blue products had they known that the products did not possess the qualities represented in Defendant's written warranties.

66.    As a direct and proximate result of Defendant's breach of its written warranties, Plaintiff and the other members of the Class have been damaged in an amount to be determined at trial.

15

### COUNT IV
### Unjust Enrichment
### (on behalf of the Class and Subclass)

67.     Plaintiff hereby incorporates the allegations set forth in Paragraphs 1–66 above.

68.     Plaintiff and the other members of the Class conferred a benefit on Defendant by purchasing its Maximum Strength Selsun Blue products.

69.     It is inequitable and unjust for Defendant to retain the revenues obtained from Plaintiff's and the other Class members' purchases of Defendant's Maximum Strength Selsun Blue products because Defendant misrepresented the benefits and harmful chemicals inside of its Maximum Strength Selsun Blue products and Plaintiff and the other members of the Class would not have purchased Defendant's Maximum Strength Selsun Blue products had Defendant not made these misrepresentations.

70.     Accordingly, because Defendant will be unjustly enriched if it is allowed to retain such funds, Defendant must pay restitution to Plaintiff and the other Class members in the amount which Defendant was unjustly enriched by each of their purchases of Defendant's Maximum Strength Selsun Blue products.

WHEREFORE, Plaintiff, on behalf of herself and the Class and Subclass, prays for the following relief:

1.     An order certifying the Class and Subclass as defined above;

2.     An award of actual or compensatory damages, or, in the alternative, disgorgement of all funds unjustly retained by Defendant as a result of its unfair and deceptive sales practices;

3.     An award of reasonable attorney's fees and costs; and

4.     Such further and other relief the Court deems reasonable and just.

### JURY DEMAND

Plaintiff requests trial by jury of all claims that can be so tried.

16

Dated: February 3, 2021          EMILY LEWIS, individually and on behalf of a
class of similarly situated individuals


/s/ Eugene Y. Turin
One of Plaintiff's Attorneys


Eugene Y. Turin
McGuire Law, P.C.
55 W. Wacker Dr., 9th Fl.
Chicago, IL 60601
Tel: (312) 893-7002
eturin@mcgpc.com

*Attorneys for Plaintiff and the putative Class*

17